**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

FRANK HANEY, et al

       Plaintiffs,      No. 3:19-cv-50191

v.

WINNEBAGO COUNTY, et al     Judge John Robert Blakey
              Magistrate Iain D. Johnston

       Defendants.

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION**
**FOR PRELIMINARY INJUNCTION**

NOW COME the Defendants, Winnebago County et al, by and through their attorneys, David J. Kurlinkus and Paul Carpenter, and for their Response to Plaintiffs' Motion for Preliminary Injunction, state as follows:

The plaintiffs have filed a motion for a preliminary injunction, seeking an order to prevent the enforcement of five ordinances passed by the County Board of Winnebago County, Illinois. The ordinances alter the duties of the Chairman of the Winnebago County Board.

**Factual background**

Plaintiff Haney is the Chairman of the Winnebago County Board, elected by voters in Winnebago County in the November, 2016 general election. Defendants, sued in their official capacities, are members of the Winnebago County Board. The majority of the defendants were elected, or re-elected, in the November, 2018 general election (Defendants McDonald, Arena, Gerl, Tassoni, Webster, Boomer and Schultz). The remaining defendants were elected, or re-elected, in the November, 2016 general election (Defendants Fiduccia, Hoffman, Wescott, Redd Salgado, Goral). County Board members are elected for 4-year terms from 20 individual districts in Winnebago County.

1

Plaintiffs also include individual voters who voted for Plaintiff Haney. Defendants also include Winnebago County. (The Winnebago County Board was named as a Defendant, but is not an entity which can be sued, and will be subject of a motion to dismiss on that ground in the future.)

Winnebago County is organized under a "township form of government," as set forth by the Illinois Counties Code. 55 ILCS 5/2-1001. This form of government permits a county to elect a chairman from the county at large, by popular vote, which is what Winnebago County has done since 1992. See Exhibit A (1991 Ordinance Establishing County Board Chairman Elected at Large.) There are certain statutory duties of the chairman, set forth by the Counties Code, but most duties are not delineated. *Cf*. 55 ILCS 5/2-1001 et seq. (Counties Under Township Organization), 55 ILCS 5/2-4001 et seq. (Counties Not Under Township Organization), 55 ILCS 5/2-5001 et seq. (County Executive Form of Government), 55 ILCS 5/2-6001 and Ill. Const. art. VII, § 3 (Cook County Commissioners). The duties, responsibilities, and powers of the chairman in counties with township forms of government are determined, in large part, by the county board. Perhaps most illustrative of the relative weakness of the chairman under this form of government is that, by statute, a chairman can send ordinances passed by the county board back to the county board to be reconsidered (colloquially described as a "veto"), but this reconsideration/veto only requires a simple majority vote to be overridden. 55 ILCS 5/2-1005.

### Preliminary issues

#### Abstention

The Plaintiffs argue that these duties, responsibilities, and powers cannot be changed during a term. Plaintiff Haney has filed a lawsuit in state court, asserting that mid-term changes to the chairman's duties violate Illinois law. See Exhibit B. The defendants dispute this, of course, but this is a matter that should be decided by a state court, interpreting the laws of Illinois. No state

court has answered whether a county board, in a county organized under the township form of government, can alter a county board chairman's duties during that chairman's term.

This court should abstain from jurisdiction in this matter under the *Burford* abstention doctrine. "When there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," federal courts should abstain from jurisdiction to allow the state court to decide these difficult questions. *Hammer v. United States Dep't of Health & Human Servs.*, 905 F.3d 517, 531 (7th Cir. 2018), reh'g denied (Nov. 21, 2018), *quoting New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989).

The issues in this case involve the legality of the changes to the Chairman's duties that were enacted by the County Board. The constitutional questions raised by the plaintiffs are a thinly disguised attempt to make an end-run around state law questions. The issues in this case are of importance to the public, involve a state law question, and the federal court should abstain from jurisdiction over these attempts to distract from the central issue in this dispute.

<u>Standing</u>

In order to proceed on their federal case, the plaintiffs have to establish standing. In order to establish what is referred to as "Article III standing", the plaintiffs must show that the "challenged action of the defendant caused an 'injury in fact' that is likely to be redressed by a favorable decision. The alleged injury must be concrete and particularized, and either actual or imminent." *Judge v. Quinn*, 612 F.3d 537, 544 (7th Cir.), opinion amended on denial of reh'g, 387 F. App'x 629 (7th Cir. 2010). The voter plaintiffs, asserting that their rights to vote were infringed, have not pled any facts to establish any injury in fact, let alone one that is concrete and particularized to them. There is no claim that the plaintiffs were prohibited from voting or that

their votes were not counted. *Abrahamson v. Neitzel* is analogous in this respect. 120 F.Supp3d 905, 917 (W.D. Wisc., 2015). In *Abrahamson*, voter plaintiffs challenged an amendment to the Wisconsin constitution, which changed the method of choosing the Chief Justice of the Wisconsin Supreme Court. The court held that the voter plaintiffs did not have standing to challenge the amendment, because they did not suffer any particularized injury. Id., at 918. The voter plaintiffs have not alleged a concrete and particularized injury that would be redressed by a favorable decision of this court.

### Preliminary injunction

In order to prevail on their motion for preliminary injunction, the moving party "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008). The Seventh Circuit has explained that courts should consider whether the movant will suffer irreparable harm in the period before his claim is resolved, whether there are adequate legal remedies, and whether there is some likelihood of success on the merits. *HH-Indianapolis, LLC v. Consol. City of Indianapolis & Cty. of Marion, Indiana*, 889 F.3d 432, 437 (7th Cir. 2018). Only if all of those requirements are met, should the court move on to the balancing of equities. Id.

While the likelihood of success need only be "better than negligible," a preliminary injunction is an extraordinary remedy. *Winter* at 24, 376, *HH-Indianapolis* at 437.

The plaintiffs assert three constitutional theories in support of their request for a preliminary injunction. None of these theories have a "better than negligible" likelihood of succeeding on the merits.

4

Right to Vote

Plaintiffs have not set forth any facts to show that they have a reasonable likelihood of prevailing on the merits of their right to vote claim. The crux of the plaintiffs' argument is that the ordinances approved by Defendants have essentially resulted in Haney being constructively removed from his position as County Board Chairman midterm, effectively nullifying Plaintiffs' votes for him in the 2016 election. Plaintiffs' arguments are not supported by the law or the facts.

Plaintiffs primarily rely on *Tully v. Edgar* to support their claim that their constitutionally protected right to vote has been violated. 171 Ill.2d 297 (Ill. 1996). However, the facts in *Tully* are not analogous to the facts in this case. The plaintiff in *Tully* challenged the constitutionality of an act passed by the Illinois General Assembly which changed the Board of Trustees of the University of Illinois from elected to appointed positions effective January 1, 1996. *Id.*, at 300. The Act provided that the term of the current elected trustees would end on the second Monday in January, 1996, or when a quorum of trustees was appointed and qualified, whichever occurred last. *Id.*, at 300-301. The Illinois Supreme Court determined that the right to vote was implicated by the statute in *Tully* as "it establishes a mechanism for *total* disregard of *all* votes case by citizens in a particular election…The Act does not simply 'impair' the vote but, rather, obliterates its effect." *Id.*, at 307 (emphasis in original). The Court thereafter applied strict scrutiny to the Act and found it unconstitutional. *Id.*, at 311-12.

The facts of this case are easily distinguishable from *Tully* as the County Board has not terminated Haney from his position as Winnebago County Board Chairman (nor could the Board do so). While the ordinances at issue have altered Haney's duties and responsibilities as Chairman, he continues to serve in the office to which he was elected by the voters. Plaintiffs' argument that Haney has been constructively removed from his position seems to assume that he no longer has

5

any role in Winnebago County government. Section 2-49 of the Winnebago County Code, attached hereto as Exhibit C, sets forth the duties of the chairman and clearly shows that Haney retains certain duties and responsibilities as the elected County Board Chairman. For instance, Haney is charged with "oversee[ing] development of long range planning goals and objectives for the county." He is responsible for appointing positions required by law; representing the County on all economic development opportunities; representing the County at all organizations to which the County belongs; serving as the primary liaison between the Board and County elected officials; monitoring the development of annual host fee allocations; developing and promoting the County's legislative agenda; assisting in the development and monitoring of the County's strategic plan; leading communication of the County's initiatives and accomplishments; reporting to the Board monthly on County affairs; and recommending ordinances and resolutions to the County Board that support County services and operations which are in the public interest. Given these enumerated duties and responsibilities as Winnebago County Board Chairman, clearly Haney continues to be responsible for a significant role in Winnebago County government.

In addition, no legal authority has been cited by Plaintiffs to support the concept of constructive termination of an elected official. Even if such a termination were possible, however, it would require more than just an alteration of duties and responsibilities. In the employment context, "[c]onstructive termination, or, better, because more precise, constructive discharge, refers to the situation in which an employer precipitates an employee's resignation by making the employee's working conditions unbearable." *Bean v. Wisconsin Bell, Inc.*, 366 F.3d 451, 454 (7th Cir. 2004).

"Constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced to resign involuntarily." *Steele v.*

6

*Illinois Human Rights Com'n*, 160 Ill. App. 3d 577, 581 (3rd Dist. 1987). Haney cannot argue he has been constructively terminated because he has not resigned, but continues to hold the office of Winnebago County Board Chairman. Moreover, Haney continues to receive the same salary and benefits that he received when he first became County Board Chairman in December of 2016. See Resolution Affixing Compensation and Other Benefits for Certain Elected County Officials, attached hereto as Exhibit D, and Affidavit of Molly Terrinoni, attached hereto as Exhibit E. Therefore, to the extent Plaintiffs' argument is based on Haney's alleged constructive termination, such a claim cannot be maintained.

In addition, the statutory authority relied upon by the County Board in passing the ordinances modifying the duties and responsibilities of the Chairman existed prior to Haney's election. Section 5-1087 of the Illinois Counties Code provides: "No county board may alter the duties, powers and function of county officers that are specifically imposed by law. A county board may alter any other duties, powers or functions or impose additional duties, powers and function upon county officers. In the event of a conflict State law prevails over county ordinance." 55 ILCS 5/5-1087.

In *East St. Louis Federation of Teachers, Local 1220, American Federation of Teachers, AFL-CIO v. East St. Louis School District No. 189 Financial Oversight Panel*, a Financial Oversight Panel created pursuant to the Emergency Financial Assistance Law voted to remove an entire school board for failure to follow the directives of the Panel. 178 Ill.2d 399, 405 (Ill. 1997). The plaintiffs asserted a right to vote argument and cited *Tully*. *Id*. at 414. The Supreme Court distinguished *Tully* from the instant case, noting that the public act in *Tully* "was enacted *after* the trustees were elected." *Id*. (emphasis in original). In contrast, the statutory section in question in *East St. Louis* was effective before the school board members took office. *Id*. at 414-15. "Thus,

7

when the instant voters elected the school board, a school board member by definition was one who could be removed for failure to obey a valid Panel order." *Id*. at 415. The Court therefore found the law did not violate the fundamental right to vote. *Id*.

Similarly, when the voters elected Haney to be Winnebago County Board Chairman, the County Board already had the statutory authority to alter the duties, powers and functions of the position of chairman that were not specifically imposed by law. This was not power given to the Board after Haney was elected, as in *Tully*. No reasonable expectation could therefore exist that Haney would necessarily retain all of the same duties and responsibilities of the previous individuals that held the chairman's position. As such, the ordinances at issue altering those duties and responsibilities do not implicate Plaintiffs' fundamental right to vote.

For all of the foregoing reasons, Plaintiffs have not established that they have a reasonable likelihood of prevailing on the merits of their right to vote claim.

Due Process

Haney opines that he has a property right in the office Chairman of the County Board and that he was deprived of that property right without (procedural) due process in that he was not provided notice and an opportunity to present objections to the ordinances passed by the County Board before they were passed. Nothing could be further from the truth.

As an initial matter, it is unlikely that Haney has been deprived of any property right. Haney arguably has a property right in his salary and benefits, and perhaps in the position of the Chairman of the Winnebago County Board. As set forth above, none of these "rights" has been denied. It is highly doubtful that Haney has a property right in the various individual duties of the Chairman position. For instance, it is difficult to conceive of a court deciding that Haney has a property right, protected by the United States Constitution, in the ability to terminate the county administrator.

Most importantly, Haney has not offered any legal authority that such duties amount to property rights, and, as a result, the argument should be deemed waived. *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016). However, the court need not even reach a decision on the question of whether being assigned to certain duties constitute property rights.

The fundamental requirement of procedural due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 331, 96 S.Ct. 893, 902 (1976). As is set forth in detail below, Haney had a meaningful opportunity to be heard on his concerns about the ordinances he complains of at five committee meetings of which public notice was given. He further had the opportunity to be heard at five County Board meetings of which public notice was given and at which he was present as the presiding officer. He participated in the discussion of the subject ordinances at several of the County Board meetings and at least once expressed his objection to one of the subject ordinances by exercising a "veto" of the ordinance, forcing a reconsideration vote at a subsequent County Board meeting.

Haney points to five separate ordinances for which he claims that no notice was given to him prior to their passing by the County Board. In each instance, the ordinance was placed on a public agenda for a committee meeting of the County Board which was conducted in open session. Following the committee meetings, the ordinances were placed on the agenda for the full County Board meetings. These agendas were publicly posted. At the County Board meetings, Chairman Haney presided over the meetings, and usually engaged in discussion of the ordinances at issue. The agendas for the committee meetings and board meetings are public documents, as are the minutes from the board meetings, and are attached hereto as Exhibits F through Z:

| Ordinance | Committee meeting agenda | County Board meeting agenda | County Board minutes | Reconsideration/veto |
|---|---|---|---|---|
| 17-CO-067 | 6/19/17 | 6/22/17 | 6/22/17 | n/a |
| Exhibit F | Exhibit G | Exhibit H | Exhibit I | |

9

| | | | | |
|---|---|---|---|---|
| 17-CO-110<br>Exhibit J | 11/13/17<br>Exhibit K | 11/21/17<br>Exhibit L | 11/21/17<br>Exhibit M | n/a |
| 18-CO-075<br>Exhibit N | | 7/26/18<br>Exhibit P | 7/26/18<br>Exhibit Q | n/a |
| 19-CO-005<br>Exhibit R | 1/3/19<br>Exhibit S | 1/24/19<br>Exhibit T | 1/24/19<br>Exhibit U | n/a |
| 19-CO-040<br>Exhibit V | 3/21/19<br>Exhibit W | 3/28/19<br>Exhibit X | 3/28/19<br>Exhibit Y | 4/11/19<br>Exhibit Z |

Exhibit F is a committee discussion item which was later adopted as Ordinance 17-CO-067. Exhibit J is a committee discussion item which was later adopted as Ordinance 17-CO-110. Exhibit N is a committee discussion item which was later adopted as Ordinance 18-CO-075. Exhibit R is a committee discussion item which was later adopted as Ordinance 19-CO-005. Exhibit V is a committee discussion item which was later adopted as Ordinance 19-CO-040. Each of these meetings was open to the public, and each meeting had on its agenda an item for Public Comment where Haney, or any other member of the public, could have addressed the committees with concerns regarding the proposed ordinances. Haney's claim that he had no notice nor an opportunity to be heard must fail.

At a meeting of the County Board held on June 22, 2017, the public agenda contained an item under the Operations and Administrative Committee for "An Ordinance Amending Chapter 2 of the County Code of Ordinances Establishing the Position of County Administrator to be Laid Over." A copy of the Agenda for the June 22, 2017, County Board Meeting is attached hereto as Exhibit H. That item was voted on by the County Board that evening, at a meeting chaired by Haney, and became 17-CO-067, one of the five ordinances he complains of taking his authority without notice or an opportunity to be heard. Haney engaged in conversation related to the

10

ordinance during the committee report prior to the vote as is evidenced in the minutes from the County Board meeting of June 22, 2017, a copy of which is attached hereto as Exhibit I.

The same procedure was followed regarding 17-CO-110. The minutes indicate that Haney engaged in conversation during the committee report but took no part in the discussion on 17-CO-110. (Exhibit M).

In July, 2018, the same procedure was followed in the enactment of 18-CO-075. Haney engaged in conversation during the committee report, but again took no part in the discussion prior to the vote on 18-CO-075, according to the minutes of the meeting. (Exhibit Q).

The fourth ordinance at issue, 19-CO-005, was enacted on January 24, 2019. The same procedure was followed. Per the minutes of the meeting, Haney engaged in conversation related to the ordinance during the committee report prior to the vote. (Exhibit U)

The final ordinance at issue, 19-CO-040, was initially voted on by the County Board on March 28, 2019. Haney engaged in conversation related to the ordinance during the committee report prior to the vote as is evidenced in the minutes from the meeting. (Exhibit Y)

Haney's allegation of insufficient notice and lack of opportunity to be heard is further undermined by the fact that after the action taken to pass ordinance 19-CO-040 on March 28, 2019, he exercised his authority under 55 ILCS 5/2-1005 (codified in the Winnebago County Code of Ordinances in Section 2-48) by refusing to sign the ordinance and sending it back to the County Board for reconsideration. Pursuant to statute, the County Board voted to reconsider 19-CO-040 at its April 11, 2019, meeting and, once again, passed the ordinance, overriding Haney's "veto." (Exhibit Z). As in the case of all of the County Board meetings where the challenged ordinances were passed, Haney was present and presided over the April 11, 2019, meeting, mooting his arguments regarding notice and the opportunity to be heard. Two other ordinances mentioned in

11

the "Statement of Facts" section of his motion as alleged attempts by the County Board to abridge his rights were passed by the County Board on July 25, 2019, and were also sent back to the County Board for reconsideration by Haney. Clearly, he is aware of ordinances that come before the County Board and has used, and continues to use, the reconsideration "veto" to make his objections known to the County Board.

All five ordinances about which Haney complains were on public agendas prior to discussion at both committee and County Board meetings. Additionally, Haney was present at, and actually presided over, all five County Board meetings where the ordinances were debated and voted upon. He participated in discussion of items at all five meetings and specifically participated in discussion about three of the five ordinances he complains about. Given the items on the agendas and his presence and actions at County Board meetings, he cannot possibly argue that he did not have notice of the actions by the County Board of which he complains, nor can he show that he did not have the opportunity to express his objections to those ordinances.

Haney's assertion that the "Defendants violated Haney's right to due process by not providing him with notice and not affording him an opportunity to present his objections before he was deprived of his protected right to office" is a factual contention that has no evidentiary support, in violation of Fed. R. Civ. Proc. 11(b)(3).

For these reasons, the plaintiff's due process claim has a negligible chance, or less, of succeeding.

Class-of-One—Equal Protection

Haney argues that he is entitled to class-of-one equal protection rights, but he misinterprets the class-of-one concept. Equal protection claims under the class-of-one scenario are designed to protect people from "discrimination in which a government arbitrarily and irrationally singles out

12

one person for poor treatment." *Brunson v. Murray*, 843 F.3d 698, 705 (7th Cir. 2016.) A class-of-one claim is designed "to prevent government actors from singling out a person for arbitrary abuse. Id., citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000). Class-of-one discrimination "is illustrated when a public official 'with no conceivable basis for his action other than spite or some other improper motive. . .comes down hard on a hapless private citizen.'" Id. citing *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013), quoting *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005).

Haney's circumstances make it impossible for him to articulate a claim for class-of-one equal protection. Haney is a member of the government of Winnebago County as the elected County Board Chairman. In no way can he state that he is the victim of arbitrary action by government actors. He himself is a government actor, and he can hardly claim that he is a "hapless private citizen" as contemplated by the Court in *Swanson*. Haney seeks to characterize the passing of ordinances by the County Board as evidencing arbitrary abuse supporting his claim for equal protection. Yet he does not, because he cannot, argue that the County Board acted outside the scope of its authority in passing those ordinances. Haney states that the County Board acted with malice because the ordinances affected the duties of his position and characterizes the actions of the passage of these ordinances by the County Board as "harassment." He misstates that the County Board "stripped his ability to speak at Board meetings" without a scintilla of evidence that the Board ever prohibited him from speaking. Additionally, as set forth above, Haney's claim that he suffered "constructive termination" is meritless.

Haney indicates that he has been treated differently than previous County Board chairmen "who committed the same or worse conduct." In his own motion, Haney characterizes his own conduct by saying that other chairmen's actions were worse. This is especially curious in light of

13

his attempt to call the actions of the County Board arbitrary or irrational. Creating the greatest difficulty for his attack on the actions of the County Board is the fact that the position of an elected County Board chairman was created by the County Board by an ordinance passed by the County Board in 1992. A copy of the ordinance passed by the County Board establishing the position of elected County Board chairman. (See Exhibit A which also contains duties of the chairman's position which were established by ordinance.)

If the County Board had the authority to establish the position that Haney occupies by ordinance, it stands to reason that they have the authority to modify or amend that ordinance by another ordinance. As to Haney's argument that he was treated differently than similarly situated past chairmen that also is without merit. Section 2-49 of the Winnebago County Code of Ordinances sets forth the duties of that office. (See Exhibit C). The history contained at the end of the section indicates that after the adoption of the ordinance establishing elected chairman's position in 1992, the duties of the County Board chairman were changed by ordinance in 2003, 2006 and 2007, presumably during tenures of "Chairmen who committed the same or worse conduct" than Haney.

Haney is obviously not in a position to state a cause of action for class-of-one discrimination. In the plurality opinion of *Del Martelle v. Brown County*, 680 F.3d 887 (7th Cir. 2012)(en banc), the court stated that a plaintiff in a class-of-one case must show that "he was the victim of discrimination intentionally visited on him by state actors who knew or should have known that they had no justification, based on their public duties, for singling him out for unfavorable treatment—who acted in other words for personal reasons, with discriminatory intent and effect." Id. at 889. The County Board's actions in enacting ordinances affecting the position of County Board Chairman, are completely within their public duties. As stated above, the County

14

Board enacted ordinances amending the duties of the County Board Chairman long before Haney occupied the position. The reasons he posits for the enactment of the ordinances are unsupported speculation. The Chairman of the Winnebago County Board, elected with over 60,000 votes, is not a hapless private citizen being picked on by a state actor. He is a member of a governmental entity whose position is subject to review and amendment by another part of the governmental entity. He cannot state a cause of action sounding in class-of-one discrimination, and this portion of his motion should be dismissed as a matter of law.

### **Additional Preliminary Injunction Requirements**

In order to grant a preliminary injunction, the court must find that the movant has a reasonable likelihood of success on the merits. Because the movants do not have a reasonable likelihood of success on the merits, the court should not need to consider the other factors of a preliminary injunction. However, the plaintiffs fail in those respects as well.

Plaintiffs claim that they will suffer irreparable harm absent injunctive relief. Interestingly, their argument is mostly confined to an argument regarding free speech that they did not even address in their "merits" section. They argue that Plaintiff Haney is "restricted from speaking" at Board meetings. The minutes from the County Board meetings referenced above conclusively contradict that claim.

The question of irreparable harm weighs in favor of the defendants. The ordinances at issue are between five months and over two years old. The public has the right to rely on ordinances lawfully passed over two years ago. Contrary to plaintiffs' assertions, the status quo is the status of the parties now (or at the time the motion for preliminary injunction was filed). "Status quo" does not refer to the status of the parties in June, 2017.

15

## **Conclusion**

For the foregoing reasons, Defendants respectfully request this Honorable Court deny Plaintiffs' Motion for Preliminary Injunction, and for such other and further relief as the court deems appropriate.

By:

/S/ David J. Kurlinkus
Deputy State's Attorney

/S/ Paul Carpenter
Assistant State's Attorney

Attorneys for Defendants

David J. Kurlinkus #6211608
Deputy State's Attorney
Civil Bureau
400 West State St., #804
Rockford, Illinois 61101
(815) 319 4799
dkurlinkus@wincoil.us

Paul Carpenter #6274660
Assistant State's Attorney
Civil Bureau
400 West State St., #804
Rockford, Illinois 61101
(815) 319 4712
pcarpenter@wincoil.us

16

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he electronically filed the foregoing Appearance on September 16, 2019, with the Clerk of the U.S. District Court, using the CM/ECF system which will send notification of such filing to all parties of record:

Kenneth M. Florey      kflorey@robbins-schwartz.com
M. Neal Smith           Nsmith@robbins-schwartz.com
Mark Daniel              mark@thedaniellawoffice.com


/S/  Paul Carpenter

17