UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

FRANK HANEY, in his individual capacity, SCOTT ANDERSON, RICHARD CROSBY, ED GEESER, JAN MANSFIELD, DAVID DALE JOHNSON, JOHANNA KOSLOFSKI, DEE PREMO, KEVIN HORTSMAN, SARAH PIPITONE, ANTHONY PIPITONE, DENNIS GREIER, JUDY GREIER, BECKY ECKER, MARK BEAULIEU, JANICE BUTITTA, JIM BUTITTA, JODI AMANS, JACKIE SCIORTINO, KEITH THOMPSON, BRENDAN BLACKLER, LORRAINE BLACKLER, KRISTIN DIXON, LESLIE HANEY, MARILYN PALADINO, JOHN PALADINO, NICK PALADINO, DOM GRISANZIO, BARB BETTS, BRENDA CHRISTIANSEN, KEN CHRISTIANSEN, PATRICIA ALMS, GARY ALMS, BILL GELSHEN, JANETTE GRISANZIO, VITO GRISANZIO, MICHAEL GRISANZIO, PHYLLIS GRISANZIO, FRANK GIAMMARESE, ROBERT HANEY, MARY JO HANEY, WILLIAM GEHLSEN, MARY KAY GEHLSEN, DOMINIC PALADINO, JENNIFER LAVASSEUR and BRIAN MAIER,

               Plaintiff,

    v.

WINNEBAGO COUNTY BOARD, THE COUNTY OF WINNEBAGO, DAVID BOOMER, in his official capacity, DAVE FIDUCCIA, in his official capacity, JOE HOFFMAN, in his official capacity, FRED WESCOTT, in his official capacity, JIM WEBSTER, in his official capacity, JAMIE SALGADO, in his official capacity, ANGIE GORAL, in her official capacity, DOROTHY REDD, in her official capacity, DAVE TASSONI, in his official capacity, BURT GERL, in his official capacity, STEVE SCHULTZ, in his official capacity, KEITH MCDONALD, in his official capacity, and PAUL ARENA, in his official capacity,

               Defendants.

No. 3:19-cv-50191

## PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs Frank Haney ("Haney") and Scott Anderson, Richard Crosby, Ed Geeser, Jan Mansfield, David Dale Johnson, Johanna Koslofski, Dee Premo, Kevin Hortsman, Sarah Pipitone, Anthony Pipitone, Dennis Greier, Judy Greier, Becky Ecker, Mark Beaulieu, Janice Butitta, Jim Butitta, Jodi Amans, Jackie Sciortino, Keith Thompson, Brendan Blackler, Lorraine Blackler, Kristin Dixon, Leslie Haney, Marilyn Paladino, John Paladino, Nick Paladino, Dom Grisanzio, Barb Betts, Brenda Christiansen, Ken Christiansen, Patricia Alms, Gary Alms, Bill Gelshen, Janette Grisanzio, Vito Grisanzio, Michael Grisanzio, Phyllis Grisanzio, Frank Giammarese, Robert Haney, Mary Jo Haney, William Gehlsen, Mary Kay Gehlsen, Dominic Paladino, Jennifer Lavasseur and Brian Maier ("Citizen Plaintiffs") (collectively, the "Plaintiffs"), by their attorneys, Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd. and Daniel Law Office, P.C., and submits this Reply Memorandum in Support of their Motion for a Preliminary Injunction, against Defendants Winnebago County Board (the "Board"), the County Of Winnebago (the "County"), David Boomer, Dave Fiduccia, Joe Hoffman, Fred Wescott, Jim Webster, Jamie Salgado, Angie Goral, Dorothy Redd, Dave Tassoni, Burt Gerl, Steve Schultz, Keith Mcdonald, and Paul Arena (collectively, the "Defendants") and states as follows:

## I.   ARGUMENT

### A. Defendants' request for abstention should be denied.

The Defendants request that this Court abstain from jurisdiction in this matter.  "It is well established that federal courts have a 'virtually unflagging obligation … to exercise the jurisdiction given them.'" *Hammer v. United States Department of Health and Human Services*, 905 F.3d 517, 530 (7th Cir. 2018) (quoting *Colorado River Water Conversation District v. United States*, 424 U.S. 800, 817 (1976)). However, a federal court may stay or dismiss a suit in exceptional

878701v1

circumstances where there is a clear important countervailing interest. *Hammer*, 905 F.3d at 530. The Supreme Court "has cautioned that abstention is appropriate only in 'exceptional circumstances,'…" *AXA Corporate Solutions v. Underwriters Reinsurance Corp*., 347 F.3d 272, 278 (7th Cir. 2003) (quoting *Colorado River*, 424 U.S. at 817). There is "a general presumption against abstention." *AXA Corporate Solutions*, 347 F.3d at 278.  In determining whether to abstain, the court's task is "not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction. Although in some rare circumstances the presence of state-law issues may weigh in favor of that surrender, the presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp*., 460 U.S. 1, 25-26 (1983).

The Supreme Court has determined that there are only two circumstance where the *Burford* abstention is proper:  (1) "when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar" and (2) "where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern". *Hammer*, 905 F.3d at 531 (internal citations omitted) (quoting *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (quoting *Colorado River*, 424 U.S. at 814)). The *Burford* abstention "is concerned with protecting complex state administrative processes from undue federal interference, [but] it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential conflict' with state regulatory law or policy." *New Orleans*, 491 U.S. at 362.  Here, the *Burford* abstention

doctorine does not apply. The Defendants argue that this matter concerns state law questions and should be decided by the state court. The general "rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction…." *Colorado River*, 424 U.S. at 817 (internal citations omitted) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910). This is a unique case that does not have difficult state law questions that will transcend this case and there is not a complex state administrative process. Furthermore, this case involves several federal-law issues that weigh against this Court surrendering its jurisdiction. The Defendants have not raised any compelling reasons as to why this Court should surrender its jurisdiction to the state court.

### B. Plaintiffs have Article III standing.

The Defendants assert that the Plaintiffs do not have standing to proceed on these claims. In order to establish Article III standing, the Plaintiffs must show: (1) an injury in fact, (2) a causal connection between the injury and the defendant's conduct, and (3) that it is likely that a favorable decision will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see Federal Election Com'n v. Akins*, 524 U.S. 11 (1998) (finding a group of voters had standing to challenge the Federal Election Commission's decision not to produce information when the voters asserted they were harmed by the inability to obtain the information, the harm was fairly traceable to the defendant, and the action could redress the voters' injury); *Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000) (finding candidates had standing to bring a § 1983 action challenging constitutionality of statute even though candidates were able to obtain enough signatures to appear on the ballot as candidates were injured by having to allocate more resource to gather signatures and candidates were deprived of solicitors of their choice, the injuries are directly traceable to the defendant, and the ability to enjoin enforcement made harm redressable). In *Baker*, the court found that voters had standing to bring a suit as they were "asserting a plain, direct and adequate interest

878701v1

in maintaining the effectiveness of their votes, not merely a claim of the right possessed by every citizen to require that the government be administered according to law***." *Baker v. Carr*, 369 U.S. 186, 208 (1962) (internal citations omitted) (citing *Coleman v. Miller*, 307 U.S. 433, 438 (1939); *Fairchild v. Hughes*, 258 U.S. 126, 129 (1922)).

The Plaintiffs have Article III standing as the Plaintiffs have established that they have an injury in fact which was caused by the Defendants' conduct and enjoining the ordinances will redress the Plaintiffs' injury. Unlike *Abrahamson v. Neitzel*, the Plaintiffs are not claiming only harm to their and every citizen's interest in proper application of the laws. Plaintiffs elected Haney on a platform of government reform. *See Abraham v. Neitzel*, 120 F.Supp 3d 905 (W.D. Wisc. 2015). The Defendants, through the passage of the Ordinances, have, against public policy, retaliated against Haney for his reform efforts and constructively removed Haney from his position as Chairman midterm and nullified an otherwise valid election. This directly effects the Plaintiffs as Haney is an advocate for them in their community. Through the passage of the Ordinances, Haney is no longer able to implement these reform efforts for which he ran and was elected. The Plaintiffs have suffered irreparable harm and will continue to suffer irreparable harm until Haney's responsibilities, powers and authority under which he was elected are restored. The Plaintiffs' injuries are a direct result from the Defendants' actions. The Defendants have disenfranchised the Plaintiffs and deprived the Plaintiffs of having their chosen elected official with specific authority, responsibilities and powers to represent them and reform County government. Furthermore, if the Ordinances are enjoined, the Plaintiffs' injuries will be redressed.

### C. Plaintiffs have a reasonable likelihood of prevailing on the merits of their claims.

#### 1. Right to Vote

Plaintiffs have set forth sufficient facts to demonstrate that there is a 'better than negligible' likelihood that they will succeed on the merits of their right to vote claim. The Defendants argue

5

that the facts in this case are not analogous to *Tully*; however, this case has many similarities with *Tully*. In *Tully*, the court found that "[t]he Act, in essence, voids the votes cast by citizen in a valid election and authorizes the Governor to select the candidates of his choice." *Tully v. Edgar*, 171 Ill.2d 297, 307 (1996). This is essentially what the Defendants did here. As the Board was not able to terminate Haney from his elected position without cause, the Board had to pass a series of Ordinances to gradually, over time, eliminate all of Haney's duties and responsibilities until Haney was left with only a few insignificant duties. The most telling damage is demonstrated in the County organizational charts (attached to the Complaint as Exhibit A) under which in the current version after the Ordinances were adopted Haney was completely removed from the organization chart in its entirety. With the ordinance changes, the Board was able to reassign all of Haney's duties and responsibilities to unelected individuals of their choosing. As in *Tully*, the passing of the Ordinances established "a mechanism for *total* disregard of *all* votes cast by citizens in a particular election." *Tully*, 171 Ill.2d at 307. The Ordinances do not simply impair the Plaintiffs' votes, but obliterates their effect. Although Haney was elected into office by the Plaintiffs based on his reform platform, the Defendants, in retaliation for Haney's reform efforts, passed a series of Ordinances that had the effect of totally disregarding the votes cast by the Plaintiffs. Each Ordinance stripped away more of Haney's duties and responsibilities as Chairman and left him with a title but no power to run County government as the Chief Executive and enact the change for which he was elected. Haney may still have the pay and the title of Chairman, but he is not allowed to operate in the position for which he was elected. This workaround for which the Board has implemented is against public policy and illegal.

The Defendants argue that this case in not analogous to *Tully* as Haney was not terminated or constructively discharged from his position as Chairman. A person does not have to resign from

6

878701v1

their position to be constructively discharged. *See Hunt v. City of Markham*, 219 F.3d 649 (7th Cir. 2000); *Wozniak v. Conry*, 236 F.3d 888, 890 (7th Cir. 2001) (finding that the employee remaining in his position was not fatal to theory of constructive discharge). Stripping someone of their responsibilities can give rise to constructive discharge. *Neal v. Honeywell, Inc.*, 958 F.Supp. 345, 348 (N.D.Ill. 1997); *see also Parrett v. City of Connersville, Ind.*, 737 F.2d 690 (7th Cir. 1984) (finding that a chief of detectives was constructively discharged when transferred to line captain in uniformed force as he was place in an intolerable position). The court in *Parrett* found that "[e]nforced idleness was not only a humiliating counterpoint to his years as detective chief but would if prolonged have depreciated his professional skills to the point where it would have been difficult for him to work his way back…to a responsible position." *Parrett v. City of Connersville, Ind.*, 737 F.2d 690, 694 (7th Cir. 1984). Plaintiffs constructively discharged Haney by passing a series of Ordinances that stripped him of his duties and responsibilities as Chairman. Haney does not need to resign or be terminated to be constructively discharged. Just as in *Parrett*, Haney is in an enforced idleness and has been placed in an intolerable position and therefore Haney has been constructively discharged from his position as Chairman.

The Defendants argue that Plaintiffs' right to vote were not violated as the Board was allowed to pass the Ordinances pursuant to Section 5-1087 of the Illinois Counties Code. However, the Board may not alter the duties, powers, and functions of Haney if done for an improper purpose, such as retaliation, which is exactly what occurred here. Additionally, the Board is not authorized to terminate Haney without cause, so the Defendants used the Ordinances to thwart Haney's reform efforts by stripping him of his duties and responsibilities as Chairman. The facts of this case are analogous to *Tully*. The Ordinances that essentially removed Haney from his position midterm were enacted *after* Haney took office. The Board was not allowed to terminate

7

Haney without cause, so after the election, in retaliation, the Board made a series of very calculated moves to ensure that Haney would be deprived of his position of Chairman midterm. Haney may still have the title and salary of Chairman, but he has been stripped of many of the main duties and responsibilities for which he was elected. With the Ordinances, the Board was able to take these important duties and responsibilities away from the Chairman position, which was held by Haney, and give them to the candidate of their choosing. This was all done *after* Haney was elected into office. The Defendants cannot use Section 5-1087 of the Illinois Counties Code to justify their unlawful and retaliatory efforts to remove Haney from office midterm. Therefore, Plaintiffs have set forth enough facts to demonstrate that there is a 'better than negligible' likelihood that they will succeed on the merits of their right to vote claim.

### 2. Due Process

Haney has demonstrated that there is a 'better than negligible' likelihood that he will succeed on the merits of his due process claim. Defendants concede that Haney has a property interest in his office as Chairman. The Plaintiffs have stripped Haney of numerous key duties and responsibilities that have been a part of the Chairman position for the past 20 years. This has had the effect of depriving Haney of his interest in office of Chairman. Giving someone the title and salary of CEO and the duties of a janitor does not make him the CEO, but a janitor. The same is true here. Haney may have the title and salary of Chairman, but he is not the Chairman. He no longer has the ability to make any of the important decisions for which the voters elected him to make.

Haney's position as Chairman was taken from him over time by the Board. This was done without due process. First, the Board was not allowed to terminate Haney as he did not commit any misconduct. Second, even if the Board was allowed to terminate Haney, the Board did not appropriately notify Haney of his termination and give him a pre-termination hearing. Haney was

878701v1

never given a pre-termination hearing. A public meeting is not the same as an evidentiary hearing where Haney would be able to defend his position as Chairman. Additionally, there was not a general election or public participation to weigh in on whether Haney's duties as Chairman should be removed. The Board never gave Haney that opportunity because of the way that the Board went about removing Haney from his position. The Board knew that they were unable to outright terminate Haney, so they used every means possible to remove his duties and responsibilities until he was left with only a few insignificant duties. Therefore, Haney has set forth enough facts to demonstrate that there is a 'better than negligible' likelihood that he will succeed on the merits of his due process claim.

### 3. Class-of-One – Equal Protection

Haney has demonstrated that there is a 'better than negligible' likelihood that he will succeed on the merits of his class-of-one claim. The Defendants argue that Haney cannot make a class-of-one claim as he is an elected official. However, Defendants cite a case in their response brief proving that this is simply not true. In *Abrahamson v. Neitzel*, the court did not dismiss plaintiff's class-of-one claim because she was an elected official. *See Abraham v. Neitzel*, 120 F.Supp 3d at 926-927. Haney is not suing in his official capacity as Chairman, but as an individual who has been singled out by arbitrary, retaliatory abuse by the Board. The Defendants' pattern of conduct, by maliciously passing at least five ordinances over the past two and a half years that single out Haney and stripping away all of his duties and responsibilities, clearly shows harassment and there is no conceivable legitimate purpose for the Defendants' behavior. This was a personal attack on Haney for his governmental reform efforts. There is no reason why Haney would not be entitled to equal protection under the Fourteenth Amendment just because he is an elected official. Therefore, Haney has set forth enough facts to demonstrate that there is a 'better than negligible' likelihood that he will succeed on the merits of his class-of-one claim.

9

### D. Additional Preliminary Injunction Requirements

As Plaintiffs have demonstrated throughout, absent injunctive relief, Plaintiffs will suffer irreparable harm. Defendants claim that the Plaintiffs arguments are mostly confined to free speech; however, this is simply not true. Defendants have violated Plaintiffs constitutional rights to equal protection, due process, and right to vote. Plaintiffs are facing irreparable harm on a daily basis that cannot be compensated by monetary amount. The irreparable harm that the Plaintiffs will suffer if the injunction is not granted clearly outweighs the irreparable harm to the Defendants if relief is granted. If the injunction is not granted, Plaintiffs' constitutional rights will continue to be violated by Defendants' actions. The preliminary injunction will simply restore the duties and rights that Haney had when he was elected to Office of the Chairman and preserve the status quo until the Court can have a hearing to decide this case on the merits.

WHEREFORE, for the reasons stated herein, Plaintiffs Haney and Citizen Plaintiffs pray that this Court will grant its request for a Preliminary Injunction and such other and further relief that this Court deems fit and proper.

Respectfully submitted,

**Haney and Citizen Plaintiffs**

By: _____

One of their attorneys

Kenneth M. Florey
M. Neal Smith
**ROBBINS, SCHWARTZ, NICHOLAS, LIFTON & TAYLOR, LTD.**
2990 N. Perryville Rd, Suite 4144B
Rockford, IL 61107-6814
Phone: 815.390.7090
Fax: 630.783.3231
kflorey@robbins-schwartz.com
nsmith@robbins-schwartz.com

10

878701v1

Mark Daniel
**Daniel Law Office, P.C.**
17W733 Butterfield Road, Unit F
Oakbrook Terrace, IL 60181
Phone: 630.833.3311
mark@thedaniellawoffice.com

11

878701v1

## <u>CERTIFICATE OF SERVICE BY ELECTRONIC MAILING</u>

I hereby certify that I electronically filed this Reply Memorandum in Support of Motion for Preliminary Injunction with the Clerk of the Court using the CM/ECF system on this 14$^h$ day of October, 2019, which constitutes service on all counsel, registered filing users, pursuant to Fed. R. Civ. P. 5(b)(2)(D) and L.R. 5.9:

David Kurlinkus
Winnebago County Assist. State's Attorney
400 W. State Street, Suite 619
Rockford, IL 61101
DKurlinkus@WinCoIL.us

Paul Carpenter #6274660
Assistant State's Attorney
Civil Bureau
400 West State St., #804
Rockford, Illinois 61101
pcarpenter@wincoil.us

By:  /s/ Kenneth M. Florey
          Kenneth M. Florey

879341v1

12

878701v1