# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| FRANK HANEY, et al., | |
| Plaintiffs, | Case No. 3:19-cv-50191 |
| v. | Judge John Robert Blakey |
| WINNEBAGO COUNTY BOARD, COUNTY OF WINNEBAGO, et al, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Winnebago County Chairman Frank Haney accuses the County and its Board of passing ordinances that strip him of his duties and responsibilities. Haney and certain other registered voters sue the County, the Board, and the Board's members in their official capacities under both federal and Illinois law. [1]. They also seek a preliminary injunction barring Defendants from enforcing the ordinances. [8]. For the reasons explained below, this Court denies their motion.

### I. Background

#### A. Factual Background

##### 1. The Parties

Haney serves as the Chairman of the Winnebago County Board. [1] ¶ 4; [26] at 4. Haney was also a registered voter who voted in the November 8, 2016 election for Chairman. [1] ¶ 4. The other named Plaintiffs reside in Winnebago County and voted in the 2016 election. *Id.* ¶ 5.

Defendant Winnebago County (County) constitutes an Illinois unit of local government. *Id.* ¶ 6. Defendant Winnebago County Board (Board) comprises 20 members; these members are voted on by individual county board districts. *Id.* ¶ 7. The Chairman, on the other hand, serves as a non-member of the Board elected by voters in the County. *Id.* ¶ 8; [26] at 5. The remaining Defendants—David Boomer, Dave Fiduccia, Joe Hoffman, Fred Wescott, Jim Webster, Jamie Salgado, Angie Goral, Dorthy Redd, Dave Tassoni, Burt Gerl, Steve Schultz, Keith McDonald, and Paula Arena—reside in the County and serve on the Board. [1] ¶ 9.

### 2. The Ordinances

The County elected Haney to the position of Chairman in November 2016. *Id.* ¶ 12. At the hearing on the current motion, Haney testified that corruption existed in the County prior to his election. [26] at 5. For example, as Haney testified, a former purchasing director for the County was convicted on federal embezzlement charges; and, another former chairman took a piece of government property that the FBI ultimately confiscated. *Id.*

When running for Chairman, Haney's platform included reforming corrupt practices. *Id.* at 6. Haney's platform, which he named ACT (short for Accountable, Collaborative, and Transparent), included proposed reforms such as: (1) implementing nepotism policies; (2) imposing transparency initiatives regarding financial and budget matters; and (3) supporting a reduction in mid-year reserve spending. *Id.*; [1] ¶ 13. Haney claims that he has attempted to implement these and other reforms since his election to Chairman, [1] ¶ 14, and that the Board resisted those efforts, [26] at 12. In his testimony, Haney speculated that, in his opinion, "in

2

some cases there was behind-the-scenes triangulation to undercut my involvement" as Chairman. *Id.*

Haney further claimed that his reform efforts have been thwarted by the Board's passage of ordinances during his term that have curtailed the authority of and powers of the Chairman position. [1] ¶ 15. Specifically:

1. Ordinance 2017-CO-067 provides that the Chairman cannot terminate the County Administrator or Chief Financial Officer without Board approval. Prior to this ordinance, the Chairman possessed sole authority regarding the employment status of these positions. *Id.* ¶ 16.

2. Ordinance 2017-CO-110 removed the requirement that the County Administrator must reside within the County; it also allows the County Administrator to appoint his or her designee to assist in supervising County departments, rather than the Chairman. *Id.*

3. Ordinance 2018-CO-075 shifted numerous duties from Chairman to County Administrator, including appointing and dismissing department heads, union negotiations, and other financial duties. *Id.*

4. Ordinance 2019-CO-005 strips the Chairman of his authority and power to supervise, direct, and control the County Administrator, instead placing such authority with the Board. Haney alleges that it also removed the Chairman's ability to assign other duties to the County Administrator. *Id.*

5. Finally, Ordinance 2019-CO-040 removes the Chairman's executive authority to, among other things, fire the County Administrator, recommend a budget, participate in short-term planning, and negotiate any economic or other

operational agreements. *Id.*

Haney testified to his belief that these ordinances have rendered the Chairman position absent from the County's organizational chart. [26] at 16. He also testified, however, that he maintains his office, his salary, a County-issued car, and health insurance. *Id.* at 32.

**B.    Procedural Background**

In August 2019, Plaintiffs brought a nine-count complaint against Defendants. In Count I, they allege that Defendants violated 42 U.S.C. § 1983 by enacting ordinances that stripped the Chairman of his duties, claiming such actions violated their Fourteenth Amendment right to equal protection of their vote. [1] ¶¶ 22–28. Similarly, Count II asserts that Defendants violated Article III of the Illinois Constitution by depriving them of their right to vote. *Id.* ¶¶ 29–34. Count III claims that Defendants engaged in First Amendment retaliation by enacting ordinances stripping Haney of his duties in retaliation for Haney's speech about governmental and ethical reforms. *Id.* ¶¶ 35–39. Counts IV and V allege federal constitutional due process violations as a result of the passage of the ordinances, which Plaintiffs allege constructively terminated Haney as Chairman. *Id.* ¶¶ 40–53. Count VI claims that a constitutional equal protection violation based upon a class-of-one theory. *Id.* ¶¶ 54–58. Count VII asserts a common law retaliation claim against Defendants. *Id.* ¶¶ 59–61. Finally, Counts VIII and IX assert Illinois constitutional due process claims. *Id.* ¶¶ 62–75.

Plaintiffs contemporaneously moved for a preliminary injunction on their right to vote, due process, and equal protection claims. [8]; [9] at 8. Plaintiffs seek to

preliminarily enjoin Defendants from enforcing the five ordinances described above. [9] at 2–3. Defendants filed a written response, [16], and this Court held an evidentiary hearing on Plaintiff's motion in November 2019, [26].

**II.     Legal Standard**

A preliminary injunction constitutes "an extraordinary remedy" reserved for exceptional cases. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008). As such, a party seeking a preliminary injunction must establish it has a likelihood of success on the merits, *Adkins v. Nestle Purina PetCare Co.,* 779 F.3d 481, 483 (7th Cir. 2015), that it has no adequate remedy at law, and that it will suffer irreparable harm if a preliminary injunction is denied, *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012); *see also Wis. Right to Life, Inc. v. Barland*, 751 F.3d 804, 830 (7th Cir. 2014).

If the moving party meets these threshold requirements, this Court then "must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied." *Stuller*, 695 F.3d at 678 (quoting *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)). To do so, this Court must also consider the public interest in granting or denying the injunction. *Id.* This Court uses a "sliding scale approach" when weighing these considerations. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006).

## III. Analysis

Plaintiffs seek to enjoin Defendants from enforcing the ordinances. [9] at 3. Defendants oppose, arguing that: (1) the voter Plaintiffs lack standing to sue; (2) *Burford* abstention requires this Court to decline exercising jurisdiction over this case; and (3) Plaintiffs are unlikely to succeed on the merits of their claims. [16]. Because standing and abstention implicate this Court's subject matter jurisdiction, this Court addresses those issues first. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 576–77 (1999); *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016); *Hinrichs v. Speaker of House of Reps. of Ind. Gen. Assembly*, 506 F.3d 584, 590 (7th Cir. 2007).

### A. Standing

Article III of the Constitution limits "federal judicial power to certain 'cases' and 'controversies.'" *Silha v. ACT, Inc.*, 807 F.3d 169, 172–73 (7th Cir. 2015) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992)). To establish Article III standing, a plaintiff must show that: (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 173 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Lujan*, 504 U.S. at 560–61). The party invoking federal jurisdiction bears the burden of establishing the elements of Article III standing. *Lujan*, 504 U.S. at 561.

Here, the parties do not dispute that Haney possesses standing to sue. And this Court agrees that Haney demonstrates standing. He claims he suffered and continues to suffer harm resulting from the Board's passage of ordinances that eliminated his duties as Chairman; and this Court can redress his injuries by enjoining the County from enforcing the ordinances. [1] ¶¶ 15–16, 19. Haney thus satisfies the requirements of Article III standing.

Nonetheless, Defendants argue that the voter Plaintiffs—i.e., all Plaintiffs except Haney—lack standing. [16] at 3–4. More specifically, they contend the voter Plaintiffs' votes were counted, and thus suffered no concrete injury. *Id.* The voter Plaintiffs counter that their injuries stem from the Board's obliteration of their votes for Haney by effectively removing Haney's responsibilities as Chairman. [20] at 5. In any event, this Court need not resolve this dispute because where "at least one plaintiff has standing, jurisdiction is secure and the court will adjudicate the case whether the additional plaintiffs have standing or not." *Tierney v. Advocate Health & Hosps. Corp.*, 797 F.3d 449, 451 (7th Cir. 2015) (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 696 n.7 (7th Cir. 2011)); *see also Korte v. Sebelius*, 735 F.3d 654, 667 n.8 (7th Cir. 2013). Because Haney demonstrates standing, this Court "need not consider whether the other . . . plaintiffs have standing to maintain the suit" at this early point in the proceedings. *Bond v. Utreras*, 585 F.3d 1061, 1070 (7th Cir. 2009) (internal quotation marks omitted).

### B. *Burford* Abstention

Abstention pursuant to the Supreme Court's decision in *Burford v. Sun Oil Company*, 319 U.S. 315 (1943) remains appropriate in only two circumstances: (1)

where there exists "difficult questions of state law bearing on policy problems of substantial import whose importance transcends the result in the case"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Hammer v. U.S. Dep't of Health & Human Servs.*, 905 F.3d 517, 531 (7th Cir. 2018) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (*NOPSI*)).

Defendants argue that the first type of *Burford* abstention applies here because the case revolves around the legality of the ordinances, which raise unique questions of state law. [16] at 2–3. Bearing a heavy burden to demonstrate that abstention applies, *Morton Coll. Bd. of Trustees of Illinois Cmty. Coll. Dist. No. 527 v. Town of Cicero*, 18 F. Supp. 2d 921, 924 (N.D. Ill. 1998), Defendants here fail to offer any explanation as to why they believe any state-law issues in this case are difficult, *see generally* [16] [26]. To the contrary, Plaintiff raises various federal and state constitutional claims—topics this Court frequently considers and adjudicates. Based upon the record, Defendants simply fail to give this Court any basis to abstain under *Burford*.

### C. Likelihood of Success on the Merits

Plaintiffs move for a preliminary injunction on three sets of claims: (1) right to vote; (2) due process; and (3) class-of-one equal protection. [9] at 8–12. The crux of each claim lies in Plaintiff's theory that Defendants violated the law by passing ordinances restricting his duties and responsibilities. *See id.*

8

Before reaching the merits, this Court notes that Defendant Board is not a suable entity. *Moule v. Winnebago Cty.*, No. 03 C 50121, 2003 WL 22071572, at *2 (N.D. Ill. Sept. 5, 2003); *see also, e.g.*, *Wright v. Bd. of Cty. Comm'rs of Cook Cty., Ill.*, No. 99C1998, 1999 WL 1249313, at *3 (N.D. Ill. Dec. 17, 1999) (dismissing Cook County Board of Commissioners as an improper party), *aff'd sub nom. Wright v. Pappas*, 256 F.3d 635 (7th Cir. 2001); *Fabiszak v. Will Cty. Bd. of Comm'rs*, No. 94 C 1517, 1994 WL 698509, at *2 (N.D. Ill. Dec. 12, 1994) ("In Illinois, a County Board of Commissioners is not an entity separate from the county, rather, its powers are co-extensive with the county."). Accordingly, this Court *sua sponte* dismisses the Board from this case. *Moule*, 2003 WL 22071572, at *2.

1. **Right to Vote**

Plaintiffs move for a preliminary injunction on their "right to vote" claims, arguing that Defendants' passage of ordinances have constructively terminated Haney from his position as Chairman, thus invalidating Plaintiffs' votes for Haney in the 2016 election. [9] at 8–9.

As a preliminary matter, Plaintiffs fail to specify whether they move on Count I (alleging a violation of the U.S. Constitution's equal protection clause) or Count II (alleging a violation of article III of the Illinois Constitution). *See generally* [9]; [20]. Plaintiffs, however, devote no discussion to the federal Constitution's equal protection clause, confining his analysis to Illinois caselaw interpreting the Illinois Constitution. *See* [9] at 8–9; [20] at 5–8. Because a party waives "perfunctory and undeveloped arguments," as well as those arguments "unsupported by pertinent authority," *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (internal quotation marks omitted),

9

Plaintiffs' utter failure to discuss their federal equal protection claim constitutes a waiver of that claim for purposes of this motion.

Turning now to the merits of Plaintiffs' right to vote claim premised upon the Illinois Constitution, Defendants argue that Plaintiffs' alleged constitutional injury does not give rise to a cognizable right to vote claim, [16] at 5, and this Court agrees.

In support of their right to vote claim, Plaintiffs rely entirely upon *Tully v. Edgar*, 664 N.E.2d 43 (Ill. 1996), which considered the application of the Illinois Constitution's guarantees of the fundamental right to vote and to have that vote counted. *Id.* at 48 (citing Ill. Const. art. III, § 1). There, the plaintiff challenged the constitutionality of an Illinois statute that changed, mid-term, the position of trustee of a state university's board of trustees from an elected to an appointed office. *Id.* at 47–48. The plaintiff argued that the state law violated his voting rights under the Illinois Constitution because it cut short the elected trustees' terms, thus nullifying the "result of a valid election." *Id.* at 48. The Illinois Supreme Court agreed, holding that the statute implicated the constitutional right to vote because "it establishes a mechanism for *total* disregard of *all* votes cast by citizens in a particular election." *Id.* at 49.

The facts here do not fit within *Tully*'s framework. Indeed, as a post-*Tully* Illinois appellate court observed, *Tully* stands for the narrow proposition that "'post-hoc' legislation that attempts to remove elected officials from office by *changing an elective office to an appointive office* infringes on the voters' fundamental and constitutionally protected suffrage rights." *People by Foxx v. Agpawa*, 105 N.E.3d 846, 853 (Ill. App. Ct. 2018) (emphasis added). The *Tully* court itself also made clear

10

that the facts of that case implicated the plaintiff's right to vote because his vote "is not simply diluted, but is totally nullified by the statutory scheme." 664 N.E.2d at 49.

Here, in contrast, the ordinances did not transform the Chairman position from an elected to an appointed position. This is a significant distinction because *Tully*'s holding rested upon the complete elimination of a public office elected by voters. The record does not establish the total nullification of votes recognized in *Tully*. Defendants did not remove Haney as Chairman of the Board through the passage of ordinances. Rather, as the hearing testimony made clear, Haney remains the Chairman of the Board; and in that capacity, he maintains his office, his salary, a County-issued car, and health insurance. [26] at 32. Moreover, the parties do not dispute that Haney retains numerous responsibilities as Chairman, including, for example: (1) developing the County's legislative agenda along with the Board; (2) appointing positions as required by Illinois state law; and (3) representing the County on economic development opportunities. [16-3] at 1.

In short, while it might remain the case that the ordinances did, in fact, lawfully strip Haney of various duties, it stretches *Tully*'s holding too far to say that Plaintiffs' right to vote is implicated under the circumstances presented by the record here. The record demonstrates that Haney continues to serve as Chairman, maintains his salary, benefits, and car, and continues to retain numerous responsibilities. *Tully* does not recognize a constitutional "right to vote" violation simply based upon the narrowing of the duties of an elected position. Absent any

11

other authority, Plaintiffs fail to demonstrate that their alleged injury implicates the right to vote guaranteed by the Illinois Constitution.

For this reason, this Court finds that Plaintiffs fail to show their likelihood of success on the merits of their right to vote claim.

### 2. **Due Process**

Next, Haney brings both substantive and procedural due process claims under the Fourteenth Amendment of the U.S. Constitution and the Illinois Constitution. This Court employs the same analysis for Haney's claims under both the federal and Illinois state Constitutions. *Rosario v. Ret. Bd. of Policemen's Annuity & Ben. Fund of City of Chicago*, No. 10 C 1512, 2013 WL 842651, at *7 (N.D. Ill. Mar. 6, 2013) ("Federal courts examining potential violations of the Due Process Clause of the Illinois Constitution apply the same tests as applied to potential violations of the Due Process Clause of the federal Constitution."), *aff'd sub nom. Rosario v. Ret. Bd. of Policemen's Annuity & Ben. Fund for City of Chicago*, 743 F.3d 531 (7th Cir. 2014).

Both substantive and procedural due process claims require a plaintiff to identify a constitutionally protected right to property or liberty. *Campos v. Cook Cty.*, 932 F.3d 972, 975 (7th Cir. 2019); *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017); *Khan v. Bland*, 630 F.3d 519, 535 (7th Cir. 2010). Here, Haney posits that his Chairmanship constitutes the relevant property interest. [20] at 8. In support, Haney cites *Brown v. Perkins*, where an Illinois federal court questioned whether elected officials might possess property interests in their offices. 706 F. Supp. 633, 634 (N.D. Ill. 1989). That case, however, ultimately recognized that the

Supreme Court has expressly held that an elected political official lacks a property right in his office. *Id.* (citing *Taylor v. Beckham*, 178 U.S. 548, 567 (1900); *Snowden v. Hughes*, 321 U.S. 1, 7 (1944)).

The Supreme Court has not overruled those holdings. Thus, this Court remains bound by the Supreme Court's instruction that, as an elected official, Haney lacks a constitutionally cognizable protected property interest in his elected position as Chairman. *See Taylor*, 178 U.S. at 576 ("public office is not property."); *see also, e.g.*, *Velez v. Levy*, 401 F.3d 75, 86–87 (2d Cir. 2005) (holding that the plaintiff "lacks a constitutionally protected property interest in her elected position sufficient to support a due process claim"); *Ford v. Donovan*, 891 F. Supp. 2d 60, 66 (D.D.C. 2012) (noting that "an elected official has no cognizable property interest in the office he holds"). Because Haney fails to identify a cognizable property interest, his due process claims fail at the outset. Accordingly, Haney also fails to demonstrate the likelihood of success on the merits of his due process claims.

### 3. **Class-Of-One Equal Protection**

Next, Haney moves for a preliminary injunction on his Fourteenth Amendment equal protection claim based upon a class-of-one theory. [9] at 11–12. To prevail on this claim, Haney must demonstrate that: (1) he was "intentionally treated differently from others similarly situated"; and (2) "there is no rational basis for the difference in treatment." *Chicago Studio Rental, Inc. v. Ill. Dep't of Commerce*, 940 F.3d 971, 979 (7th Cir. 2019) (quoting *Paramount Media Grp., Inc. v. Vill. of Bellwood*, 929 F.3d 914, 920 (7th Cir. 2019)); *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir.

2012). Here again, Haney fails to demonstrate the likelihood of success on the merits of this claim.

The Supreme Court has held that the "class-of-one theory of equal protection does not apply in the public employment context." *Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 598 (2008); *see also Frederickson v. Landeros*, 943 F.3d 1054, 1061 (7th Cir. 2019); *Forgue v. City of Chicago*, 873 F.3d 962, 968 (7th Cir. 2017); *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 685 (7th Cir. 2013). In reaching this conclusion, the Court reasoned that, while the Constitution prohibits the government from treating private citizens differently based upon subjective, individualized assessments when acting as a legislator or regulator, the government faces no similar restraints when acting as an employer. *Engquist*, 553 U.S. at 604. Indeed, the government possesses "significantly greater leeway in its dealings with citizen employees." *Id.* at 599.

And while the plaintiff in *Engquist* constituted a hired public employee, other federal courts have recognized that *Engquist* applies equally to elected public officials. *See Dyer v. Maryland State Bd. of Educ.*, 187 F. Supp. 3d 599, 619 (D. Md. 2016), *aff'd*, 685 F. App'x 261 (4th Cir. 2017); *Gus Kramer v. Cty. of Contra Costa*, No. C 12-3604 CRB, 2012 WL 6608979, at *3 (N.D. Cal. Dec. 18, 2012); *Blank v. Benzie Cty. Bd. of Comm'rs*, No. 1:10-CV-201, 2012 WL 1085471, at *5 (W.D. Mich. Mar. 30, 2012). *Engquist* thus forecloses Haney's class-of-one equal protection claim.

### D. This Court Denies Plaintiffs' Motion

Because Plaintiffs fail to demonstrate the likelihood of success on the merits of their claims, this Court need not conduct further analysis as to the remaining preliminary injunction factors or the balancing of harms. *GEFT Outdoors, LLC v.*

14

*City of Westfield*, 922 F.3d 357, 367 (7th Cir. 2019); *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 966 (7th Cir. 2018). This Court denies Plaintiffs' motion.

## IV. Conclusion

For the reasons explained above, this Court denies Plaintiffs' motion for preliminary injunction [8]. This case remains set for a status hearing on 4/17/20 at 1:00 p.m. in Rockford, at which time the parties shall come prepared to set case management dates for the remaining life cycle of the case.

Dated: March 18, 2020

ENTERED:

_____
John Robert Blakey
United States District Judge